[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By application dated July 28, 1994, the plaintiff, Andrew L. Nagy, the owner of property known as 702 Curtiss Street Southington, Connecticut, applied to the Southington Planning and Zoning Commission for a special permit to establish a blasting service business on the above-mentioned property. On October 4, 1994, the Southington Planning and Zoning Commission held a public hearing on the application which was continued to and concluded on October 18, 1994. Subsequently, at its November 15, 1994 meeting the Commission voted, by a vote of 4 to 3, to deny the special permit.
The plaintiff-appellant alleges that he has been aggrieved by the decision of the Commission for the reason that he is the owner of the subject premises. Additionally, the plaintiff alleges that the Commission s decision to deny the application was wrongful and illegal because: there was unlawful participation of one of the Commission members since that member did not attend each of the public hearings, and therefore, was not familiar with the issues presented by the application or the evidence and arguments offered; the decision was made in disregard and in violation of the standards and procedures set forth in Section 5-02.2C and Section 8 of the Town of Southington Zoning Regulations; the decision was made in violation of the standards and scope of authority granted to the Southington Planning and Zoning Commission under General Statutes § 8-2; the decision was clearly erroneous, without factual basis in view of the records; and the decision was arbitrary and capricious and characterized by an abuse of discretion.
General Statutes § 8-8(1) defines an "aggrieved person" as "a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
The plaintiff in the present action is the owner of the subject property, and therefore, he is an "aggrieved person" by definition under the statute.
Plaintiff did not brief the issue of alleged unlawful participation of one of the defendant commission members for failure to attend the public hearings and not being familiar with the evidence and arguments offered. Accordingly, the CT Page 11047 court considers this allegation abandoned.
"When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision . . . The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it."Daughters of St. Paul. Inc. v. Zoning Board of Appeals,17 Conn. App. 53, 56-57, 549 A.2d 1076 (1988).
When considering an application for a special exception (special exception and special permit use are interchangeable), a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. It has no discretion to deny the special exception if the regulations and statutes are satisfied. Westport v.Norwalk, 167 Conn. 151, 155 (1974). Under the provisions of § 5-02.2 of the Southington Zoning Regulations, a blasting service business is a permitted use subject to meeting the provisions of the regulations and statutes.
"Courts must not, and legally cannot, substitute their discretion for the wide and liberal discretion enjoyed by zoning agencies . . . Courts can grant relief on appeal only where the local authority has acted arbitrarily or illegally and has thus abused the discretion vested in it." Summ v. ZoningCommission, 150 Conn. 79, 89, 186 A.2d 160 (1962).
Accordingly, this court can only review each of the five reasons on which the Commission based its decision to deny the plaintiff a special use permit.
Property Values
The plaintiff contended that he presented substantial evidence at the public hearing which demonstrates that the property values of the surrounding areas would not be adversely affected. The plaintiff noted that the property immediately surrounding the proposed site is almost entirely zoned industrial. (Exhibit M. Minutes of 10/4/94 hearing, pg. 9). Additionally, the plaintiff's attorney offered evidence that the property to the east of the site is vacant industrial land, and on the other side of that is Interstate 84. (Exhibit M, Minutes CT Page 11048 of 10/4/94 hearing, pg. 9). To the south, across Curtiss Street, is industrial land which contains a pond. To the west of the proposed development are approximately 600 feet of the applicant's land, most of which is covered by wetlands before it reaches R-40 land. (Exhibit M, Minutes of 10/4/94 hearing, pg. 9; Exhibit HH, Site Plan Map and Area Map). To the north is more industrial land, and a Connecticut Light and Power easement. (Exhibit M, Minutes of 10/4/94 hearing, pg. 9). Additionally, the Town Planner stated that there are a few residences in the area of the proposed site, and that these residences would all be beyond 750' from the site. (Exhibit M, Minutes from the 10/4/95 hearing, pg. 9). Lastly, a Southington resident testified that the storage of dynamite is safer than storage of gasoline. (Exhibit S, Minutes of 10/18/94 hearing, pg. 4A).
The defendant commission concluded that property values would be adversely affected by the issuance of a special use permit to the plaintiff. The evidence that property values would decrease was based on the speculations of protesting residents, without any supporting expert testimony. (Exhibit M. Minutes of 10/4/94 hearing, pgs. 13-17).
Rule 8.02 of the Town of Southington Zoning Regulations states that "[a]ll such uses are declared to possess such special characteristics that each shall be considered as an individual case. In authorizing any use, the Commission shall take into consideration the public health, safety and general welfare, property values, the comfort and convenience of the public in general, and may attach reasonable conditions and safeguards as a precondition to its approval . . ."
Although the members of the Commission have the authority to rely on their own personal knowledge with regards to matters concerning traffic congestion, street safety and property values, Feinson v. Conservation Commission, 180 Conn. 421,427, 429 A.2d 910 (1980), no facts were offered to support the conclusions that property values would be adversely affected. See Daughters of St. Paul v. Zoning Board, supra, at page 69. On the other hand, the plaintiff offered evidence that nearly all of the surrounding property was zoned for industrial use and that any residential property would be more than 750' from the site, and the site met all statutory criteria. Against this background, the court concludes that the Commission erred when it determined that the property values of the surrounding CT Page 11049 land would be adversely affected if the plaintiff were issued a special use permit for a blasting service.
Public Health Safety
The plaintiff contended that the public health and safety would not be compromised if the plaintiff were issued a special use permit. The Assistant Fire Chief, Richard McDonough stated in a letter to the Town Planner that "[t]his department has inspected the site proposed by Andrew Nagy of Blastech, Inc., for storage of explosives at 702 Curtiss Street. We find this site to be suitable for this purpose. We have dealt with Mr. Nagy for many years and have found him to be a reliable, reputable contractor. His other storage sites in Southington have always been properly maintained and met required codes." (Exhibit H, Letter from McDonough, dated 9/13/94). Additionally, the plaintiff's attorney stated that the plaintiff would be complying with the industry standards, specifically, the American Table of distances, a standard which has been in existence for over sixty (60) years. (Exhibit S, Minutes of 10/18/94 hearing, pg. 15A). Further, it was indicated that the plaintiff had proposed a six (6) foot chainlink locked fence around the area as additional security.
In opposition, the defendant commission heard evidence from several residents. However, no expert testimony was offered regarding the effects on the public health and safety if this application were approved.
The expert opinions of the Town Planner and the Assistant Fire Chief, as well as the plaintiff's past history and willingness to comply with industry standards, are sufficient evidence to support the applicant's contention that issuing a special use permit would not jeopardize the public health and safety. Again, the defendant Commission received no expert testimony to support the contention that the public health and safety would be jeopardized by the issuance of a special use permit. Accordingly, the court concludes that the Commission erred in determining that the public health and safety would be compromised if the plaintiff were awarded a special use permit.
Entry into the property and into the vault area.
The plaintiff argued that entry into the property and into the vault area is safe, secure, and over and above the CT Page 11050 requirements of the applicable state and federal regulations. The plaintiff's attorney stated that there are 178 regulations with which the plaintiff must comply and with which the State Fire Marshall and local Fire Marshal make sure the plaintiff complies. (Exhibit S, Minutes of 10/18/94 hearing, pg. 14A). Also, the plaintiff's attorney stated that the boxes or magazines for storage are 3/8" steel with 2 5/8" hardwood on the doors. (Exhibit S, Minutes of 10/18/94 hearing, pg. 14A). Additionally, the plaintiff has proposed a 6' chainlink locked fence around the area for additional safety. (Exhibit S, Minutes of 10/18/94 hearing, pg. 14A). In summary, the plaintiff asserted that the use proposed by the plaintiff is a very regulated activity, and he must be inspected at least once a year to ensure compliance.
In opposition, the defendant heard testimony that entry into the property and into the vault area is not safe to the surrounding area. The evidence consisted of several residents who expressed concern about explosives getting into the wrong hands of individuals or a non-professional person. (Exhibit S, Minutes of 10/18/94 hearing, pg. 7A, 11A-12A).
Conclusions by laypersons as to the effect from the granting of this special use permit, without supporting evidence or facts, is insufficient to support the denial of the special use permit. Daughters of St. Paul. Inc. v. ZoningBoard of Appeals, supra, at page 69.
Against this background, the plaintiff has presented sufficient evidence to support his position that the entry into the property and into the vault area is safe, secure, and over and above the requirements of the applicable state and federal regulations. Therefore, the court again concludes that the Commission erred in its determination that entry into the property and into the vault area would not be safe to the surrounding area.
Harmony with the development of the area
The plaintiff further argued that he presented substantial evidence at the public hearing which sufficiently demonstrated that the proposed use would not be detrimental to the orderly development of the area. Evidence was offered that the property immediately surrounding the proposed site is almost entirely zoned industrial. (Exhibit M. Minutes of 10/4/94 CT Page 11051 hearing, pg. 9). Additionally, the plaintiff's attorney offered evidence that the property to the east of the site is vacant industrial land, and on the other side of that is Interstate 84. (Exhibit M, Minutes of 10/4/94 hearing, pg. 9). To the south, across Curtiss Street, is industrial land which is covered by a pond. To the west of the proposed development are approximately 600 feet of the applicant's land, most of which is covered by wetlands before it reaches R-40 land. (Exhibit M, Minutes of 10/4/94 hearing, pg. 9; Exhibit HH, Site Plan Map and Area Map). To the north is more industrial land, and a Connecticut Light and Power easement. (Exhibit M, Minutes of 10/4/94 hearing, pg. 9). Additionally, the Town Planner stated that there are a few residences in the area of the proposed site, and that these residences would all be beyond 750' from the site. (Exhibit M, Minutes from the 10/4/95 hearing, pg. 9). The record indicated that the proposed site is in an I-2 zone and, as such, it would be in a category of the least restrictive in the Town of Southington. (Exhibit S, Minutes of 10/18/94 hearing, pg. 3A). Moreover, the applicant's attorney stated that one of the reasons that this particular site is attractive to the plaintiff for the establishment of a blasting service is because the development potential in the area is extremely limited. (Exhibit M, Minutes of 10/4/94 hearing, pg. 10).
In opposition, it was argued that the proposed storage of blasting materials is not in harmony with the development of the area and would be detrimental to the development of the area. Members of the public stated that there would be a negative impact on the future development of other properties. (Exhibit M, Minutes of 10/4/94 hearing, pg. 14). Additionally, the Chairman of the Commission indicated that the development of adjacent area would be jeopardized if the plaintiff were granted a special use permit for a blasting service, claiming simply that the storage of dynamite would be detrimental to the area. (Exhibit X, Pg. 4).
Rule 8-02 of the Town of Southington Zoning Regulations states that "[i]n authorizing any use, the Commission shall take into consideration the public health, safety and general welfare, property values, the comfort and convenience of the public in general, and may attach reasonable conditions and safeguards as a precondition to its approval. The Commission shall also consider the following general objectives: That the proposed use shall be of such location, size and character CT Page 11052 that, in general, it will be in harmony with the appropriate and orderly development of the area in which it is proposed to be situated and will not be detrimental to the orderly development of adjacent properties in accordance with the zone classification of such properties."
The plaintiff has submitted evidence showing that the land surrounding the proposed site is mostly industrial. The only evidence to support the contention that such a site would not be in harmony with the development of the area, was the lay-opinions of area residents as well as the opinions of certain members of the Commission.
Conclusions by laypersons as to the effect from the granting of this special use permit, without supporting evidence or facts, is insufficient to support the denial of the special use permit. Daughters of St. Paul. Inc. v. ZoningBoard of Appeals, supra, at page 69. Accordingly, the defendant Commission acted arbitrarily and abused its discretion in determining that the issuance of a special use permit to the applicant in this case would be detrimental and not in harmony with the development of the area.
Entrance and exit onto West Street
The plaintiff offered testimony that the impact on the traffic in the area would be insignificant. The plaintiff's attorney stated that there will be five pick-up trucks leaving the premises in the morning before 7:00 a.m. and returning around 5:00 p. m. (Exhibit M, Minutes of 10/4/94 hearing, pg. 10). Additionally, there would only be a total of nine employees entering and exiting the premises. (Exhibit M, Minutes of 10/4/94 hearing, pg. 10). The Town Engineer visited the proposed site and noted that the sight distances from the driveway were acceptable and were absolutely no problem. (Exhibit M, Minutes of 10/4/94 hearing, pg. 13). Furthermore, one Commission member stated that a traffic light at the intersection of Curtiss and West Street would probably correct the dangers of turning left onto West Street from Curtiss Street. (Exhibit X, Minutes of 11/15/94 hearing, pg. 10).
In response, it was argued that there is a concern as to the main entrance and especially the exit onto West Street with regard to possible accidents occurring in the hauling of dynamite. CT Page 11053
The court finds that the traffic volume attributable to the granting of this special use permit would be minimal. Only five trucks and nine employees would be entering and exiting the premises per day. Moreover, deliveries would occur only once every three to four days. The court concludes that the Commission erred in its determination that the granting of a special use permit to the applicant would result in increased traffic volume. Although the Commission members are permitted to consider facts learned through personal observation,Jennings v. Connecticut Light Power, 140 Conn. 650, 675
(1954), the expert testimony of the Town Engineer, after visiting the site, indicates that the site distances are acceptable and absolutely no problem. Conclusions by laypersons as to the effect from the granting of this special use permit, without supporting evidence or facts, is insufficient to support the denial of the special permit. Daughters of St. Paul. Inc. v.Zoning Board of Appeals, supra, at page 69.
Accordingly, the court finds that the record is lacking in regard to evidence in opposition to the special permit use application since it is primarily based on testimony from lay individuals, whereas expert testimony from the Town Planner, Town Engineer and Fire Marshall was offered in support of the application. Therefore, the plaintiff's appeal is sustained.
JOSEPH H. GOLDBERG SENIOR JUDGE