[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Quality Sand Gravel, Inc. d/b/a B B Group has appealed the decision of the Defendant, Torrington Planning 
Zoning Commission, denying its special exception application. Quality applied to Torrington for a special exception to perform earth and rock excavation pursuant to § 6.4 of Torrington's Zoning Regulations for property located at 260 Burr Mountain Road on 4/1/97. Record Item 1. Quality had an option to purchase said property which was contiguous to other property owned by Quality.
Torrington published notice and held a public hearing on the application on 05/14/97. Record Item 3. The hearing was continued on 05/28/97 and closed on 06/10/97. Record Items 11 15. At the public hearing, many individuals spoke for and against the application and Torrington heard evidence and accepted correspondence. Record Items 31, 32 33. At its 7/23/97 meeting, Torrington denied the special exception application, citing its reasons for doing so on the record. Record Item 30. Quality subsequently filed this appeal on 08/08/97.
The property at issue lies between two viable quarry operations, B B Group and O G Industries. B B has full authorization from Carol and Norman Rout, owners of 260 Burr Mountain Road, to obtain a special exception for excavation on said property. The option is still in existence.
Additionally, said property is located in an outlying residence zone (R-60). The neighboring properties are: to the CT Page 7377 North — the O G quarry (R-60 Zone); to the East — B B's existing quarry (Industrial zone); to the South — the Old Torrington Drive-in and two non-conforming use residences (Industrial zone); to the West — a residence owned and occupied by the individual(s) who previously subdivided their lot in order to sell O G land for their quarry and access road (R-60). (Map, Ex. 58)
The June 25, 1997 report stated that the application complied with all requirements as to Traffic/Fire/Safety Hazards, Traffic Circulation and Public Water Supply Protection. The report also stated that "there is unlikely to be any effects" due to B B's proposed excavation activities on the Lake Ridge and Burr Pond State Park areas.
The Commission denial states: "Although the proposed operation may be consistent with the venture to the North and the West it is not consistent with the use to the South which is a viable residential neighborhood along Burr Mountain Road." (Ex. 30, 7/23/97 trans. At p. 12)
The "viable residential neighborhood" to the South consists of two residences which the city turned into non-conforming uses when it determined in its 1989 Master Plan that the area was industrial in nature and rezoned it as such. (S8-9)
Pursuant to Connecticut General Statutes § 8-8, any person aggrieved by the decision of a planning and zoning commission may appeal to the superior court. The holder of a contract or an option to purchase property has a sufficient legal interest to establish the aggrievement for an appeal from the denial of the application. Shapero v. Zoning Board, 192 Conn. 367,376, 472 A.2d 345 (1984). Quality Sand Gravel, Inc. d/b/a B B Group is the option owner of the property subject of the application that forms the basis of this appeal. B B is therefore an aggrieved party and entitled to bring the instant appeal.
A special permit authorizes a use which is expressly permitted in the zoning regulations subject to certain conditions specified therein. Robert A. Fuller, Land Use Law and Practice, Sec. 3.7 at 29 (1993). It is considered "generally compatible" with the zoning district but is subject to agency review in order to establish consistency with as of right uses as said consistency is established through compliance with applicable CT Page 7378 zoning regulations. Id. Because a use permissible through a special permit has already been designated a compatible use, there is no requirement (analogous to that applicable to variances) that it be issued sparingly. Terry J. Tondro,Connecticut Land Use Regulation, Sec. 3.F at 178 (2nd ed. 1992). Consequently, as the zoning commission ". . . has already made the decision that the use authorized by the special permit is acceptable in the district if potential adverse side effects can be controlled or eliminated through the use of conditions on the permit or modifications of the plan . . .", the principle issue before the commission is how to "mitigate side effects" of a fundamentally compatible use. Id.[1]
In reviewing an application for a special permit, a municipal zoning agency acts in an administrative rather than legislative capacity. Daughters of St. Paul, Inc. v. Zoning Boardof Trumbull, 17 Conn. App. 53, 56 (1988); See also Tondro, Sec. 3.F at 178. Specifically, the task of the agency is:
. . . to determine whether (1) the applicant's proposed use of the property is expressly permitted under the commission's regulations; (2) whether the standards in the relevant zoning regulations are satisfied, and (3) whether conditions necessary to protect public health, safety, convenience and property values, as provided by section 8-2 of the General Statutes, can be established.
Fuller, at Sec. 33.4, p. 569-70; See also Grace CommunityChurch v. Planning Commission of Bethel, 42 Conn. Sup. 256, 261
(1992). In reviewing an application for a special permit, a zoning agency has no discretion to impose any additional conditions that are not already contained in the zoning regulations. Daughters of St. Paul, supra, Tondro, Sec. 3.F at 177-78; Fuller at Sec. 33.4, p. 571. In particular, vague and undefined aesthetic considerations may not be used to support a denial. DeMaria v. Enfield Planning Commission, 159 Conn. 534,541 (1970). Thus, if an application meets the criteria detailed in the applicable regulations, the agency is required to grant the special permit. Tondro, at Sec. 3.F, p. 179[2]; Fuller, at Sec. 33.4, p. 571. Consequently, even the imposition of conditions on an application for a special exception presupposes lack of compliance with a specific regulation. See e.g. Hochbergv. Zoning Commission of Washington, 24 Conn. App. 526, 530 (1991) (stating: "[t]he Washington Zoning Commission has not enacted such regulations that would authorize the special conditions imposed. . . . These conditions imposed by the CT Page 7379 commission without being warranted in the zoning regulations are void . . ."); Tondro, Sec. 3.H, p. 188.
If a zoning authority states the reasons for its decision on the record, a reviewing court must limit its consideration to evaluating the reasonableness of the stated reasons. Daughters ofSt. Paul, supra. The reasons must be "supported by the record" and "pertinent to the decision." Id. at 68. A zoning board's action will be sustained if one of the stated reasons is held sufficient to support the agency action. Id. At 56-67: Fuller, at Sec. 33.4. p. 571 ("The agency's conclusion must be reasonably supported by facts discernible in the record."). However, "a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . ." Daughters of St. Paul, supra, at 57.
The fundamental requirements governing the issuance of special exceptions in Torrington appear in Sec. 8.2.2. of the town zoning regulations. Sec. 8.2.2. states:
 In addition to any conditions found elsewhere in these regulations, the Commission shall grant a special exception only if the Commission finds that the proposed special exception will not:
A. create or aggravate a traffic, fire, or other safety hazard;
B. hamper the city's traffic circulation;
 C. be detrimental to the existing neighborhood or its residents;
 D. be detrimental to the long term protection of a public water supply watershed.
On July 23, 1997, the Commission voted to deny B B's application. (See Ex. 30 trans. 7/23/97 at p. 12).
It is clear from the record that B B's proposal satisfied Sections. A, B and D of Section 8.2.2. Hoben's June 25, 1997 Memorandum to the Commission confirmed compliance as to these areas, notwithstanding his refusal to make said report public with his recommendation of a larger buffer. (See Ex. 21).
Pursuant to Conn. Gen. Stat. Sec. 8-3c "[w]henever a CT Page 7380 commission grants or denies a special permit or special exception, it shall state upon its record the reason for its decision." Sec. 8.2.1. of the Torrington regulations similarly requires that "[i]n granting or denying a special exception the Commission shall state upon the record the reasons for its decision." As noted above, the reason stated by the Commission at its July 23, 1997 meeting centered on the conclusion that B B's proposal was an "unacceptable intrusion into a viable residential zone." Ex. 30).
The applicable regulations in the instant action appear in Sections 6.4.7 and 8.2 of the Torrington Zoning Regulations.[3]
These sections of the regulations do not authorize the Commission to prevent "intrusion" into "viable" residential neighborhoods. The "residential zone" the Commission apparently seeks to protect is comprised of two private residences along Burr Mountain Road. These residences are not in a residential zone but an industrial zone in which long standing quarry operations are the predominant use. (See Ex. 58). The two concerned residences, therefore, constitute a non-conforming use in the zone.[4] Moreover, quarry operations are an expressly permitted use in an R-60 zone.
The Connecticut Supreme Court recently reiterated the rule that when a zoning commission has stated its reason for its decision on the record,[5] the reviewing court should limit its review to the propriety of the reasons stated:
 [W]here a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision. . . . The reviewing court ought only to determine whether the assigned grounds are reasonable supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . .
West Hartford Interfaith Coalition, Inc. v. Town Council of WestHartford, 228 Conn. 498, 514-15 (1994). In reviewing the Commission's denial, therefore, this Court should confine itself to evaluating the propriety of the reasons stated by the Commission. CT Page 7381
The Commission's reasons appear at Ex. 30, p. 12. The principle that seems to have guided the Commission is the conclusion that the proposed use would constitute an "unacceptable intrusion into a viable residential zone." This reason is an incorrect basis upon which to deny B B's application for several reasons. These reasons include incompatibility of the reasons with the stated objectives of the Master Plan, failure of the Commission to overcome the conclusive presumption in favor of the compatibility of B B's proposal with permitted uses in the zone, and insufficient grounds to claim aesthetic considerations.
In its stated reasons for denying B B's application, the Commission concedes that ". . . the Master Plan does suggest a need for industrial property." The city's 1989 Plan of Development does more than merely suggest encouragement of industrial uses. Section I, entitled "Industrial Development", states that because manufacturing is the city's largest employer, "[t]o insure that industry is able to expand it is necessary to set aside sufficient land for future industrial growth." Id. At 56. By way of background Section I also recites the history of the 1989 change in the zoning regulations to eliminate residential uses in industrial zones due to ". . . concern over the dwindling supply of vacant industrial land." Id. Under its "Objectives" Section I provides: "Locate industrial development in areas zoned for such use . . . [and] . . . protect industrial land from loss to residential and retail development. Id. at 57. Furthermore, under the "Policies" section, Section I lists: "Rezone suitable land for industrial uses." Id. Finally, Section I also states that the city's goal is: "To promote a diversified and stable economy by encouraging compatible industrial development and encourage the operation of existing industries. (Emphasis added.) Id. at 56.
Clearly, the Plan of Development's policy is to actively encourage industrial uses where possible. B B's property is located in a R-60 zone in which quarry operation is an expressly permitted use by special exception. Where a use is expressly permitted by special exception the task of the Commission is to "minimize side effects" i.e., find a way to grant the proposal, if possible, by the imposition of any necessary conditions. The commission's own expert, Mr. Hoben submitted a report stating that the project was possible subject to an increased buffer zone along the southern boundary. Given this administrative record, CT Page 7382 and the total absence of any objective scientific evidence to contradict the findings of the experts, the Commission cannot categorically deny B B's application and give it no opportunity to comment on any proposed conditions, particularly where the Plan of Development expressly encourages the use B B seeks.
Unless town zoning regulations specifically permit evaluation of particular conditions related to "public health, safety, convenience and property values" as articulated in General Statutes Section 8-2(a)[6]:
 "[t]he designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services property values or the general harmony of the district."
TLC Development, Inc. v. Planning Commission of Branford,215 Conn. 527, 532-33 (1990) (applying the presumption to review of commission denial of a site plan application); See also SowinAssociates v. Planning Commission of South Windsor,23 Conn. App. 370, 376 (1990) (stating: "General policy statements gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit."). This presumption of compatibility of uses is applicable to uses requiring approval by the town commission, as in a special exception. See TLC, supra, at 532-33; Friedman v. Planning Commission of Rocky Hill,222 Conn. 262, 266 (1992) (applying conclusive presumption principle to a site plan application); Barberino Realty and Development Corporationv. Planning and Zoning Commission of Farmington, 222 Conn. 607 (1992); See generally Tondro, Sec. 3.G., p. 187 (including 1996 supplement pp. 66-68). In circumstances where the presumption applies, a "general objective" appearing in the town zoning regulations cannot be used as a basis for denying B B's application but only as a reason for requiring a modification. See TLC, supra, at 533.
No Torrington regulations articulate standards for evaluating the "viability" of a given neighborhood. Clearly, no Torrington zoning regulation specifically prohibits unacceptable intrusions into viable residential zones. Therefore, no specific regulations authorizing evaluation of the general concerns articulated in General Statutes Section. 8-2(a) exist. Moreover, pursuant to CT Page 7383 the Court's decision in TLC, the Commission cannot rely on general objectives tangentially related to preservation of neighborhoods (if this is what "viability" means) to support a denial of the application. Consequently, B B's use should be conclusively presumed to be valid and no further inquiry into its effect on property values or the harmony of the district should be permitted. The absence of any controlling regulations together with the fact that quarry operations are an expressly permitted use in an R-60 zone establishes a conclusive presumption[7] of the compatibility of B B's use. The record is devoid of any evidence sufficient to overcome this presumption. As such, the Commission's denial is improper, not only for its stated reasons, but also because the record fails to substantiate a denial on any grounds deriving from the Torrington regulations.
Although in some circumstances the courts have recognized aesthetic considerations as a proper basis for zoning determinations, such considerations must derive from provisions of the city regulations. See generally Tondro, Sec. 3.C.6, pp. 109-115[8]; Sec. 3.H, pp. 196-97; See also Allied Plywood v.Planning and Zoning Commission of South Windsor,2 Conn. App. 506, cert. denied, 194 Conn. 808 (1984) (holding that denial of a site plan application on grounds that proposal would "infringe on nearby residential property" was incorrect as stated reason was not listed as a condition in the town regulations). In the instant case, the Commission does not include any reference to any aesthetic criteria derived from the Torrington zoning regulations. The Court, therefore, rejects any argument by the Commission on aesthetic grounds.
For the reasons stated, the appeal is sustained.
BY THE COURT
HON. WALTER M. PICKETT, JR. JUDGE TRIAL REFEREE