442 So.2d 344 (1983)
Joanne P. SNIDER and Sue M. Gesaman, Appellants,
v.
Robert GRODETZ; Leo Kozlowski; Grace Clark and Connie Show, Appellees.
No. 82-1737.
District Court of Appeal of Florida, Fifth District.
December 8, 1983.
Robert O. Marks of Bornstein, Petree, Cooper & Marks, Orlando, for appellants.
Norman J. Smith of Brinson, Smith, Heller & Smith, P.A., Kissimmee, for appellees.
COWART, Judge.
The issue in this case is whether a "motor home" recreational vehicle falls within a restrictive covenant prohibiting mobile homes, trailers and trucks from being parked on lots within a subdivision.
Plaintiffs filed a complaint seeking to prohibit defendants from parking a motor home on their lot located in the Buenaventura Lakes subdivision. It was alleged that the motor home violated the following restrictive covenant:
No house trailers or mobile homes shall be allowed on any of the said lots. No lot shall be used as a junk yard or auto graveyard. No trucks or house trailers of any kind shall be permitted to be parked in the subdivision for a period of more than four hours, unless the same is present in the actual continuous construction or repair of buildings, trailers shall not be used for living purposes. No trucks shall be parked overnight in areas zoned Residential. The term "trucks" as used in this paragraph shall not include pick-up trucks, van-type trucks or other similar vehicles rated "three-quarter ton" or less when such vehicle is used or owned by a resident of the subdivision, as a regular or usual form of transportation.
At trial defendant Joanne Snider testified that the motor home was used as a recreational vehicle and not as a permanent dwelling. The trial court permanently and perpetually enjoined appellants from parking on their property
any vehicle that is identified, termed or described as a "motor home" or "motor coach," except as allowed by the subdivision restrictions for up to four hours; and the defendant shall remove the same from said lot within ten days of the date of this order.
It is well established by Florida case law that covenants are strictly construed *345 in favor of the free and unrestricted use of property, but effect will be given to the manifest intention of the parties as shown by the language of the covenant. A covenant which is substantially ambiguous is resolved against the party claiming the right to enforce the restriction. See, e.g., Washingtonian Apartment Hotel Company v. Schneider, 75 So.2d 907 (Fla. 1954); Moore v. Stevens, 90 Fla. 879, 106 So. 901 (1925); Orange Gardens Civic Assn. v. Harris, 382 So.2d 1340 (Fla. 5th DCA 1980). In the instant case, the trial court found no substantial ambiguity in the restriction. We agree that the restriction is not ambiguous and reverse the trial court's injunction and hold that a motor home is not a house trailer, mobile home or a truck.
The mobile home and motor home markets grew out of the house trailer industry. In the 1940's, especially during the postwar years, many manufactured trailers were sold for use as permanent housing. In the 1950's the house trailer industry split into two separate components, the mobile home industry concentrating exclusively on the production of permanent housing, and the recreational vehicle industry which manufactured trailers for leisure use.[1] In 1959, an unsuccessful trailer company was taken over by a group of Iowa businessmen who reorganized the company and renamed it Winnebago Industries. This marked the beginning of the motor home industry, an industry that has witnessed spectacular growth over the last twenty years. Although mobile home and motor home production grew out of the house trailer industry, they are now considered separate markets and the terminology relating to these different industries has gradually become more distinct and precise.
A mobile home is commonly defined as a factory built dwelling unit that is transported to a homesite where it is placed on concrete strips or foundations.[2] A mobile home is not self-propelled and is designed for use as a permanent dwelling. By contrast a house trailer is considered a recreational vehicle and is designed for more temporary use and to be regularly pulled or towed by an automobile or other self-propelled vehicle. However, there are two main types of recreational vehicles, the ones that are towed, e.g., house trailers, soft top campers, and travel trailers, and the ones that are self-propelled. The motor home falls into the latter category.
By 1973 each of the terms "mobile home" and "motor home" had acquired specific meaning more precise than the mere component words themselves and were in such common use in all regions of the United States that Webster's New Collegiate Dictionary 738, 752 (1973 ed.) carried both terms as main entries and defined and contrasted them as follows:
mobile home n: a trailer that is used as a permanent dwelling, is usu. connected to utilities, and is designed without a permanent foundation  compare MOTOR HOME
motor home n: an automotive vehicle built on a truck or bus chassis and equipped as a self-contained traveling home  compare MOBILE HOME
The Florida legislature has periodically refined its definitions relating to mobile homes, motor homes, and motor vehicles. Statutes referred to "recreational vehicle-type units" and defined the term "motor home" for the first time in 1972 (s. 1, ch. 72-339). In 1972 the recreational vehicle industry recorded sales of over 2.5 billion dollars for the year. By 1973 the legislature had made it clear that a mobile home was not the same as a motor home. The term "mobile home" according to section 320.01(1)(b), Florida Statutes (Supp. 1972), included any type of trailer or vehicle body without independent motive power ... designed either for travel over the highways or for housing accomodations or both."
Before 1978 the legislature's definitions were poorly drafted. For example, the *346 term "mobile home" once referred to a variety of vehicles including house trailers and "chassis mounts" (campers which are mounted on the body of a small truck). See, e.g., § 320.01, Fla. Stat. (1971). However, in 1978 the legislature's definitions were harmonized with generally accepted terminology.[3] In that year section 320.01 was amended and the definition of "mobile home" was restricted to a structure built on an integral chassis designed to be used as a dwelling. § 320.01(2), Fla. Stat. (1981).
The terms "house trailers" and "mobile homes" as contained in the restrictive covenant must be accorded their ordinary, obvious meaning as commonly understood in October of 1973, when the restrictions were imposed.[4] It can safely be stated that by 1973 the term "motor home" was in common use and denoted a self-propelled recreational vehicle. Therefore it cannot be held as a matter of law that the terms "house trailers" and "mobile homes" in these restrictions were commonly understood and intended to include self-propelled recreational vehicles known generically as motor homes.
Since the covenant in question does not refer to motor homes the restriction does not apply to self-propelled recreational vehicles. Appellants therefore did not violate the restrictive covenant by parking their motor home next to their house and the judgment is reversed and the case remanded for further proceedings consistent herewith.
REVERSED.
ORFINGER, C.J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting:
I respectfully dissent.
In order for the majority to reach its conclusion, it has restated the issue raised by appellants and has set aside common and ordinary English language usage. For example, the opinion says "mobile home is commonly defined as a factory built dwelling unit that is transported to a homesite where it is placed on concrete strips or foundations." I agree that is one common definition. But who's to say a truly mobile home is not also included just because it has its own motor propelling it?
What we have here is a home for use on the road  it is driven about and lived in. It provides all the shelter any home does and gives an added benefit  it is mobile. Thus it is a mobile home.
The definitions given in the majority opinion are stated as if established by universal usage. They are not. I disagree, for example that a house trialer is only "a recreational vehicle that can be pulled by the family automobile." Some people call a house trailer a mobile home and use the terms interchangeably and synonymously.
What was most obviously meant to be restricted in this neighborhood was the parking of large, and to some, unsightly, second homes on residential lots. I do not know where they came from but all the history lessons about how different types of shelter have evolved since the war, cannot hide what's clear.
The trial judge was correct in his conclusion and should be affirmed.
NOTES
[1] 19 Encyclopedia Americana 286, 287 (1980 ed.). Also see A. Bernhardt, The Mobile Home Industry (1978).
[2] 19 Encyclopedia Americana 286 (1980 ed.).
[3] Compare s. 1, ch. 78-221 with s. 1, ch. 70-391.
[4] See Moore v. Stevens, 106 So. at 903-04; Baggett v. Boege, 264 So.2d 97 (Fla. 2d DCA 1972).