## ROBERT I. FARRIOR ET AL. *v.* ZONING BOARD OF APPEALS OF THE BLACK POINT BEACH CLUB ASSOCIATION
### (AC 21358)

Lavery, C. J., and Foti and Mihalakos, Js.

Argued March 18—officially released May 28, 2002

*Theodore A. Harris,* for the appellants (plaintiffs).

*Edward B. O'Connell,* with whom, on the brief, was *Elisa Valentin,* for the appellees (defendant).

*Opinion*

LAVERY, C. J. The plaintiffs, Robert I. Farrior and Carol F. Farrior, appeal from the judgment of the trial court upholding the decision of the defendant, Black Point Beach Club Association zoning board of appeals (board), that sustained the action of the association's zoning official in issuing the plaintiffs a cease and desist order. The plaintiffs claim on appeal that the court improperly concluded that the board did not abuse its discretion when it interpreted the association regulation that defined "mobile home" as including "motor homes," such as that owned by the plaintiffs and stored on their property. We agree and reverse the judgment of the trial court.[1]

The following facts and procedural history are relevant to the issue on appeal. Black Point Beach Club Association is a shoreline community located in East Lyme. Pursuant to the authority conferred by the General Statutes[2] and a special act[3] of the legislature, it has zoning regulations and authorities distinct from those of the municipality. Those regulations disallow the presence of "mobile homes" on residential lots within the community.

[1] The plaintiffs argue alternatively that the board's interpretation of the regulation was a change from past practice that amounted to an amendment of the regulation such that their storage of their motor home on their property should be considered a preexisting nonconforming use. Because our resolution of their first claim is dispositive of the appeal, we need not address the plaintiffs' secondary argument.

[2] General Statutes § 8-1 (a) provides in relevant part that "[a]ny municipality may, by vote of its legislative body, adopt the provisions of [chapter 124 of the General Statutes] and exercise through a zoning commission the powers granted [t]hereunder. . . ." General Statutes § 8-1a provides that the term "municipalities" encompasses "districts" establishing zoning commissions under General Statutes § 7-326, and General Statutes § 7-324 provides that, as used in General Statutes §§ 7-324 to 7-329, the term "district" includes any "beach or improvement association."

[3] 21 Spec. Acts 537, No. 462 (1931), enabled the creation of the Black Point Beach Club Association.

At the August 1, 1998 meeting of the association's zoning commission, its zoning official "advised the commission of an issue concerning the storage of motor homes on lots in the residence district." According to its minutes, "[t]he commission reviewed the definition in the regulations concerning 'mobile homes' and determined that motor homes meet the same definition and are, therefore, not permitted under the regulations."

On August 21, 1998, the zoning official issued a cease and desist order to the plaintiffs regarding the motor home they had recently purchased and were storing on their property. On September 18, 1998, the plaintiffs appealed from the official's action to the board. On September 24, 1998, the association sought the advice of counsel regarding the meaning of the applicable regulation. On October 29, 1998, counsel, while acknowledging that the meaning of the regulation was arguable, opined that the regulatory definition of "mobile homes" encompassed motor homes also. On October 31, 1998, the board held a public hearing on the plaintiffs' appeal.

At the appeal, the plaintiffs argued that the item in question was a motor home or recreational vehicle, rather than a mobile home, and that storing such an item was not disallowed by the regulations. They claimed that the item in question did not meet the definition of "mobile home" in the zoning regulations, nor did it qualify under definitions provided in the General Statutes, dictionaries or encyclopedias. They argued that mobile homes and motor homes were entirely different and distinct items of property, and that if the association wanted to ban both from residential areas, it needed to amend the regulations so as to make that rule clear to residents. At the conclusion of the hearing, the board voted to sustain the zoning official's action.

Thereafter, the plaintiffs appealed from the board's decision to the Superior Court. After concluding that

the board's action was not arbitrary, illegal or in abuse of its discretion, the court denied the plaintiffs' appeal. This appeal followed.

We first set forth our standard of review. "Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with . . . liberal discretion, and its action is subject to review . . . only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 697, 784 A.2d 354 (2001).

"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the [board]." (Citation omitted; internal quotation marks omitted.) *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 603, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002).

"The regulation is a local legislative enactment, and in its interpretation we seek to discern the intent of the legislative body as manifested in the words of the regulation. . . . Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that

which is not clearly within its express terms. . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning . . . ." (Citations omitted.) *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 441, 586 A.2d 590 (1991). "[W]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [and] doubtful language will be construed against rather than in favor of a [restriction] . . . ." (Internal quotation marks omitted.) *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals*, 17 Conn. App. 53, 66, 549 A.2d 1076 (1988), quoting *Bassett* v. *Pepe*, 94 Conn. 631, 637, 110 A. 56 (1920).

Black Point Beach Club Association zoning regulation § IV, part two, describes generally the types of structures allowed on residential lots and provides in relevant part that "[m]obile homes will not be permitted on any lot . . . ."[4] "Mobile Home" is described in § 1, the definitional section of the regulations, as "[a] one-family dwelling of vehicular, portable design, built on a chassis and designed to be moved from one site to another and to be used without permanent foundation." "Dwelling, One Family" is defined as "[a] detached building designed for or occupied by one (1) family." "Building" is defined in relevant part as a "structure with walls

---

[4] Section IV, part two, provides: "No tents or temporary buildings shall be erected or placed upon the property, provided that the placement of pup tents for casual or temporary use shall not be prohibited and the placement of party tents or canopies for social occasions shall not be prohibited, provided such placement shall not last longer than seven consecutive days and complies with all applicable requirements of the Department of Public Safety and the Building Code of the Town of East Lyme which require permits in some instances. No building or structure shall be erected on a lot prior to the erection of the dwelling. Mobile homes will not be permitted on any lot. One unoccupied trailer or boat may be stored on a lot, except that any such trailer or boat shall be located within the setback requirements on any side of the lot located on a street and any trailer shall also be located within all other required setback lines."

and a roof securely affixed to the land." "Motor homes" are not mentioned or defined in the regulations.

From a reading of the plain language of those provisions, it is unclear whether they are intended to apply to items such as the plaintiffs' motor home. Particularly, although the motor home is unquestionably of "vehicular, portable design [and] built on a chassis," it is not a "dwelling," as that term explicitly is defined as a type of "building," which in turn contemplates attachment to the land. Furthermore, it is unclear whether the description "to be used without *permanent* foundation" (emphasis added) implies that a defining feature of a "mobile home" is a *temporary* foundation or, rather, no foundation at all. Last, the passive phrase, "to be moved," arguably does not apply to an item that has its own power supply and thus moves of its own accord. Because the provision at issue is ambiguous,[5] we must look elsewhere for interpretive guidance to determine the natural and usual meaning of the term "mobile home."

Several of our sister courts have recognized a distinction between mobile homes and motor homes. In *Snider*

[5] The lack of clarity in the regulatory definition of "mobile home" is further evidenced by the zoning official's need to consult with the zoning commission regarding its meaning, and the board's subsequent submission of the question to the association's counsel. We pause at this juncture to note that we are troubled by the board's apparent belief, as reflected in the hearing transcript, that it was bound by the legal opinion it had solicited from its counsel. The board's chairman stated at the hearing that the board's interpretation of the definition of "mobile home" was "[n]ot a matter of our discretion. [Counsel] said in his legal opinion it was not permitted, so it was not a matter of discretion or anything like that and it wasn't up to our discretion to decide." In its letter addressing the question, counsel characterized its opinion as "advice" and in no way suggested that the board lacked discretion to decide otherwise. Although a zoning board of appeals may seek technical and professional assistance, including legal advice, it is the *board's* duty to interpret the regulations, giving consideration to all of the evidence and arguments and exercising its discretion independently. General Statutes § 8-6; *Spero* v. *Zoning Board of Appeals*, supra, 217 Conn. 444.

v. *Grodetz*, 442 So. 2d 344, 346 (Fla. App. 1983), the District Court of Appeal of Florida held that a restrictive covenant[6] disallowing "mobile homes" from a subdivision did not encompass a "motor home," which was used as a recreational vehicle and not as a permanent dwelling. The court noted that although the two items shared common manufacturing roots, the motor home and house trailer industries had come to be "considered separate markets and the terminology relating to these separate industries has gradually become more distinct and precise.

"A mobile home is commonly defined as a factory built dwelling unit that is transported to a homesite where it is placed on concrete strips or foundations. A mobile home is not self-propelled and is designed for use as a permanent dwelling. By contrast a house trailer is considered a recreational vehicle and is designed for more temporary use and to be regularly pulled or towed by an automobile or other self-propelled vehicle. However, there are two main types of recreational vehicles, the ones that are towed, e.g., house trailers, soft top campers, and travel trailers, and the ones that are self-propelled. The motor home falls into the latter category." Id., 345.

The court further stated that by 1973, the different meanings of the terms "mobile home" and "motor home" were commonly known throughout the country, and that the distinction between the two was articulated both in a common dictionary and in Florida's statutes. Id. Giving the term "mobile home" its "ordinary, obvious meaning as commonly understood"; id., 346; the court concluded that the covenant disallowing "mobile homes" was not intended to apply to "self-propelled

---

[6] Like zoning regulations, restrictive covenants are in derogation of common-law property rights, and courts construing them will not extend them by implication. *Pulver* v. *Mascolo*, 155 Conn. 644, 649, 237 A.2d 97 (1967).

recreational vehicles known generically as motor homes." Id.

Other courts have reached similar conclusions in varying contexts. See, e.g., *Sharpe* v. *Trail*, 902 P.2d 304, 307 (Alaska 1995) (in context of eviction statute, " 'mobile home is a detached, single family dwelling unit designed for long term occupancy, which distinguishes it from the motor home or travel trailer' "); *Peel* v. *Melani*, 829 P.2d 277, 278 (Wyo. 1992) (in interpreting restrictive covenant, "motor home is not a 'house trailer, mobile home or other structure . . . placed upon [a] lot' "); *Dehnel* v. *Paradise R.V. Resort*, 588 So. 2d 668, 669 (Fla. App. 1991) (for purposes of eviction, "recreational vehicle . . . not a mobile home"); *Hidden Valley Civic Club* v. *Brown*, 702 S.W.2d 665, 667–68 (Tex. App. 1985) (in context of deed restriction, recreational vehicle or camper not "mobile home"); *Sylvan Glens Homeowners Assn.* v. *McFadden*, 103 Mich. App. 118, 122, 302 N.W.2d 615 (in interpreting restrictive covenant, "trailer is not self-propelled but is designed to be drawn by another vehicle [while] motor home is a self-propelled independent vehicle"), appeal denied, 411 Mich. 1050 (1981); *Phillips* v. *Schwartz*, 607 S.W.2d 203, 207–208 (Mo. App. 1980) (restrictive covenant barring "trailer or movable house" applied to mobile homes but not camper trailers); *Redding* v. *Slaughter*, 208 Kan. 206, 208–209, 491 P.2d 897 (1971) (for licensing purposes, trailer coaches distinct from mobile homes); compare *Ott* v. *Johnson*, 262 Ind. 548, 552, 319 N.E.2d 622 (1974); *Brownfield Subdivision, Inc.* v. *McKee*, 19 Ill. App. 3d 374, 379, 311 N.E.2d 194 (1974), aff'd, 61 Ill. 2d 168, 334 N.E.2d 131 (1975); *Bowman* v. *Holsopple*, 155 Ind. App. 272, 275–76, 292 N.E.2d 274 (1973) (each concluding items in question were "mobile homes").

The legislature also distinguishes between mobile homes and motor homes, as reflected in the General Statutes. "Motor home" is defined in title 14, which

governs motor vehicles, as "a vehicular unit designed to provide living quarters and necessary amenities which are built into an integral part of, or permanently attached to, a truck or van chassis . . . ." General Statutes § 14-1 (45). "Mobile homes" are defined, in relevant part, in chapter 412, a comprehensive scheme of governance for mobile home parks, as "detached residential unit[s] . . . which are intrinsically mobile with or without a wheeled chassis . . . designed for long-term occupancy and to be placed on rigid supports at the site where it is to be occupied as a residence . . . ." General Statutes § 21-64 (1); see also General Statutes § 21-64a.[7] Those definitions and classifications are consistent with the notion articulated in the case law that "motor homes" are primarily vehicles while "mobile homes" are primarily dwellings.

A review of general research resources reveals a similar distinction. Merriam-Webster's Collegiate Dictionary (10th Ed. 1999) defines a "mobile home" as "a dwelling structure built on a steel chassis and fitted with wheels that is intended to be hauled to a usu. permanent site," and "motor home" as "a large motor vehicle equipped as living quarters." A legal encyclopedia provides that a " 'mobile home' may be defined as a movable or portable dwelling built on a chassis, designed without a permanent foundation, suitable for

---

[7] General Statutes § 21-64a provides that within the statutes, the terms "mobile home" and "mobile manufactured home" are interchangeable. General Statutes § 21-64 (1) provides: " 'Mobile manufactured home' means a detached residential unit having three-dimensional components which are intrinsically mobile with or without a wheeled chassis or a detached residential unit built on or after June 15, 1976, in accordance with federal manufactured home construction and safety standards, and, in either case, containing sleeping accommodations, a flush toilet, tub or shower bath, kitchen facilities and plumbing and electrical connections for attachment to outside systems, and designed for long-term occupancy and to be placed on rigid supports at the site where it is to be occupied as a residence, complete and ready for occupancy, except for minor and incidental unpacking and assembly operations and connection to utilities systems . . . ."

connection to utilities, and intended for year-round living. A mobile home may be distinguished from a travel trailer[8] in that the latter is a portable structure, built on a chassis and designed for use as a temporary dwelling for travel, recreational, and vacation uses. . . . The distinction between mobile homes and travel trailers is clear and is based upon the permanency of occupation of the former." 53A Am. Jur. 2d, Mobile Homes and Trailer Parks § 1 (1996).

On the basis of the foregoing, we conclude that the natural and usual meaning of the term "mobile home," as commonly understood, does not encompass "motor homes." As such, the board abused its discretion when it interpreted the applicable regulatory language arbitrarily and unreasonably to conclude otherwise. "[C]riteria contained in a zoning commission's regulations must be as reasonably precise as the subject matter requires and as reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations." *Helbig* v. *Zoning Commission*, 185 Conn. 294, 307–308, 440 A.2d 940 (1981). "[E]very owner of property located in a town which has adopted zoning is entitled to be able to ascertain, with reasonable certainty, what uses he may legally make of any portion of his property." (Internal quotation marks omitted.) Id., 308.

In this case, the provision barring "mobile homes" was insufficient to apprise residents of their rights and obligations as to "motor homes." If the association had intended through its regulations to disallow the storage on residential property of both motor homes and mobile homes, it easily could have said so.[9] See *Harlow* v.

---

[8] As previously explained, travel trailers and motor homes both are subtypes of recreational vehicles. *Snider* v. *Grodetz*, supra, 442 So. 2d 345.

[9] Our conclusion that the drafters of the association regulations did not intend to disallow motor homes is further supported by their explicit sanctioning of "unoccupied trailer[s]," subject to setback requirements. See footnote 4. "Trailer" is defined in § 1 of the regulations as "[a] vehicular device designed to be pulled by a truck or automobile and typically used

*Planning & Zoning Commission,* 194 Conn. 187, 194, 479 A.2d 808 (1984).

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiffs.

In this opinion the other judges concurred.

for hauling, camping and/or boating." As the court explained in *Snider* v. *Grodetz,* supra, 442 So. 2d 345, trailers and motor homes are both recreational vehicles, distinguished only by the fact that the latter moves via its own power supply. It is not logical that the drafters would allow one type of recreational vehicle yet disallow another that is functionally identical, based on that minor distinction.