[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Balf Company appeals the decision of the defendant planning and zoning commission of the town of Manchester denying the plaintiffs' application for a special exception permit for the construction and operation of concrete manufacturing plant on its property in that town. The commission acted pursuant to General Statutes 8-3c and applicable plan and zoning regulations of the town. The plaintiff appeals pursuant to § 8-8. The court finds in favor of the plaintiff.
The facts necessary for the court's decision are undisputed and fully CT Page 7052 reflected in the record. The plaintiff owns the property in question, consisting of approximately 55 acres in an area zoned "Industrial." The plaintiff has operated an asphalt production plant on the property for many years, predating the adoption of zoning regulations. In 2000, the plaintiff determined that it wished to construct and operate a concrete production plant on the property. The proposed concrete plant would occupy approximately 2 acres.
Section 16.13(a) and (b) of the zoning regulations allow "Manufacturing" and "Processing and assembly of materials" as principal uses in an Industrial zone without special exception permit. There is no dispute that the operation of a concrete manufacturing plant is such an activity and, as such, would not require a special permit under most circumstances. Section 16.02 of the zoning regulations, entitled "The Regulating of Large Site Development," however, provides "In order to ensure that the objectives and provisions set forth in Section 16.01 are achieved, these regulations require that development of sites in excess of four (4) acres . . . be subject to special exception approval." Section 16.15.02 contains a similar directive, referring to "development of an area in excess of four (4) acres."
Relying on section 16.15.02, the town planning officer advised the defendant commission and the plaintiff that the plaintiff would have to obtain a special permit "because Balf's property is over four acres." The plaintiff did apply, and the commission held the required hearing. At the hearing, the plaintiff presented evidence, including the testimony of experts, and there was opposition testimony. Following the hearing, the commission voted to deny the application for the special permit. The commission stated its reasons for its decision, and these may be summarized as follows: (1) that the "location is not suitable for this particular industrial use," (2) the location and height of the proposed structures would diminish the value of adjoining property, (3) that noise and dust would harm the environment and diminish property values, and (4) "that overall the proposed use will have a detrimental effect on the public health, safety and welfare, (and) property values." It is that decision which is the subject of this appeal.
The court finds that the plaintiff is aggrieved based on its undisputed ownership of the property that is the subject of the commission's decision.
The dispositive issue in this case is whether the plaintiff was required to apply for a special permit for the construction and operation of the concrete plant. In its brief on appeal to this court, the plaintiff contends that the applicable regulations allow those activities as permitted uses without special exception permit. If that were true, CT Page 7053 the commission would not have been in a position, nor would it have been authorized, to deny permission for the project. The court agrees with the plaintiff on this issue.
The sole basis for subjecting the plaintiff to the special exception procedure was that the plaintiffs property consisted of more than four acres. The defendant commission contends that the provisions in section 16.02 and 16. 15.02 require a special exception for a project that would otherwise be a permitted use whenever the owner's lot size exceeds four acres. The court disagrees with this interpretation.
As noted, section 16.02 refers to "development of sites in excess of four (4) acres" and section 16.15.02 refers to "development of an area in excess of four (4) acres" as the factor which triggers the requirement of obtaining a special exception. The term "development" is defined in the regulations as "any construction or grading activities or removal of vegetation to improved or unimproved real estate." The regulations do not contain a definition of the term "site," but an orthodox dictionary definition is "the spatial location of an actual or planned structure or set of structures; a space of ground occupied or to be occupied by a building . . ." Webster's Ninth New Collegiate Dictionary.
In the light of these definitions and the plain language of the regulations themselves, the factor that controls whether a special exception is required is the size of the specific area to be developed and to be occupied by the actual construction project. The size of the entire lot, of which the construction area is only a part, is not significant.
This interpretation of the regulations is strengthened, as the plaintiff points out, by the language in section 16.02 setting forth the purpose of the project size limitation to four acres. The purpose is "to ensure that the objectives and provisions set forth in Section 16.01 are achieved. . . ." Section 16.01 sets forth requirements for the development work in the actual construction area, such as soil and vegetation removal, grading, and the encouragement of plant growth. Requiring a special exception permit for large construction projects occupying more than four acres would help ensure that there would be no large scale violations of the provisions of section 16.01. Conversely, section 16.01 is not concerned with any parts of a lot that are not directly affected by the construction, and it follows that the size limitation in section 16.02 is likewise not related to that unaffected area.
Courts should reject interpretations of statutes (and regulations) that produce bizarre or illogical results. State v. Uretek, Inc., 207 Conn. 706, CT Page 7054 719 (1988). Consider some possible results of the interpretation urged by the commission. An owner of a ten acre lot who proposes to construct a small manufacturing plant on a half acre site would have to obtain a special exception permit, while an owner of, say, a four acre lot could construct a manufacturing plant eight times larger, occupying the whole four acre site, without such permit. The commission's interpretation, which would allow such anomalies, would frustrate the obvious purpose of the construction size limitation, which is to subject large developments to commission scrutiny so as to ensure compliance with section 16.01 and other regulations.
"Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with . . . liberal discretion, and its action is subject to review . . . only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) Farrior v. Zoning Board of Appeals, 70 Conn. App. 86, 89
(2002).
"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the (commission)." (Citation omitted; internal quotation marks omitted." Id.
"In the enforcement of zoning regulations which are in derogation of common law property rights, such regulations are to be construed strictly and should not be extended by implication. . . . Where more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . doubtful language will be construed against rather than in favor of a [restriction]. Common sense must be used in interpreting a zoning regulation, because it is assumed that the zoning authority intended to accomplish a reasonable and rational result." (Citations and internal quotation marks omitted.)Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53,66 (1988).
The most reasonable, and most common sense, interpretation of the regulations in question in this case is that the provisions of sections CT Page 7055 16.02 and 16. 15.02 do not require the plaintiff to obtain a special exception permit to construct and operate the proposed concrete manufacturing plant because the plant would occupy an area less than four acres in size. The planning officer and the commission were in error, therefore, in requiring the plaintiff to apply for the special exception permit.
Two further aspects of this case deserve comment. First, the concerns about the plaintiffs project expressed at the hearing and in the reasons given for the commission's decision are typical of the concerns about industrial zones in general — noise, dust, heavy vehicle traffic, etc. — but presumably all of these concerns and others were known and considered by the commission at the time it established the zone in question in this case. If current circumstances suggest that the zone designation is no longer appropriate for that area of town, the commission is empowered to make the necessary zone changes. It may not, however, do so indirectly by subjecting developers to the special exception permit procedure for projects that are permitted uses under present regulations.
Second, the court's decision on this appeal does not relieve the plaintiff of the obligation to comply with other relevant provisions of the regulations, including sections 16.03 and 16.04, requiring certification by the zoning enforcement officer that the project complies with all relevant provisions of the regulations and other laws. Nor does this decision affect the plaintiffs rights under Conn. Gen. Stats. sec. 8-6
(a)(1).
For all of the reasons set forth above, the appeal is sustained.
Maloney, J.