[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Helen Ramey appeals the decision of the defendant zoning board of appeals of the town of Manchester affirming the decision of the zoning enforcement officer of that town to permit construction of an accessory building on property of defendant Lorraine Rowe. The board acted pursuant to Conn. Gen. Stats. sec. 8-6. The plaintiff appeals pursuant to section 8-8. The court finds the issues in favor of the plaintiff.
Certain facts necessary to the court's decision are not in dispute and are fully reflected in the record. In January 2000, defendant Lorraine Rowe and her son, Eric Rowe, filed with the Manchester Building Department and the town zoning enforcement officer an application for a building permit and certificate of zoning approval regarding a proposed new building, 16 by 28 feet on the ground and consisting of two stories, to be constructed on Mrs. Rowe's property at 163 5. Main Street in Manchester. Both documents referred to the proposed building simply as a "shed."
The property in question is in a residential zone. There already existed on the property a house occupied by Mrs. Rowe, and the new "shed" was to be an accessory building. A building permit and zoning certificate were duly issued in February 2000.
Construction began in the Spring of 2000. Problems soon arose. In October 2000, the chief building inspector wrote to Mrs. Rowe that the shed, still under construction, was "being used for something other than storage" and added, "The specific use of the structure can only be for storage purposes." In November 2000, after an inspection, the building inspector issued a "Stop Work Order," citing four violations of the building code. These were that windows not shown on the original plan were being installed, that the building was obstructing a right-of-way, that the building was encroaching on side line and rear set back limits, and that no electrical permit had been issued. CT Page 14498
Sometime prior to August 2001, the defendant sought and was denied a variance of the side line regulation. In August 2001, the defendant submitted revised plans to address all of the violations. On August 27, 2001, the assistant chief building inspector wrote to Mrs. Rose informing her that the amendments to her original building plans were satisfactory, that the Stop Work Order "was removed," and that construction of the building could be resumed.
On September 1, 2001, the plaintiff appealed the decision of the building inspector to the defendant zoning board of appeals. The board convened a public hearing on the appeal on October 24, 2001. On October 30, 2001, the board met and, after discussion, voted 3 to 2 to sustain the plaintiffs appeal; that is, to reverse the decision of the building inspector and reinstate the Stop Work Order. However, Conn. Gen. Stats. sec. 8-7 requires the concurring vote of four members of the board to reverse an order of the building official, and, therefore, the plaintiffs appeal to the board was defeated by operation of law. It is this action of the board that is the subject of the plaintiffs appeal to this court.
The plaintiff timely appealed the decision of the board to this court. She did not, however, apply for a restraining order at that time. See Conn. Gen. Stats. sec. 8-8 (g). While this appeal has been pending, the defendant Lorraine Rowe completed construction of the building.
In accordance with the stipulation of the parties, the court finds that the plaintiff owns land that abuts the property which is the subject of the board's decision. Accordingly, the court finds that she is aggrieved by that decision. Conn. Gen. Stats. sec. 8-8 (a).
In support of her appeal, the plaintiff argues that the building erected by Mrs. Rowe is not a permitted use of residential property under the town's regulations and, therefore, the board's decision allowing its construction was in error. The court agrees.
Article II, section 1.02 of the regulations provides that uses other than the "dominate use" as residential property may be appropriate. "Such (other) uses may exist by virtue of being a permitted use or a special exception as set forth in the regulations governing the zoning district in which the use is located." These other uses include accessory uses, as defined in Article II, sections 1.03 and 1.03.01.
Section 1.03 provides "An accessory use is a use which is clearly incidental to and clearly subordinate to the principal use." CT Page 14499
Section 1.03.01 sets forth a list of accessory uses that are permitted uses. The list includes, in subsection (f), "Garden sheds." The list does not include any other sheds.
Section 1.03.03 sets forth a list of accessory uses which are prohibited in residential zones. The list does not include non-commercial "sheds."
Section 1.03.04 sets forth construction criteria relating to height (18 feet maximum), placement (to the side or rear of the principal building), and compliance with side line and rear line requirements.
After the vote which failed to defeat approval of the building, the members of the board took pains to set forth their reasons. The three members who voted to overturn the building official's approval of the building indicated that they did so because they. determined that the intended use of the building did not "fit the regulations." Their prior discussion indicated clearly that they interpreted the regulations as allowing the construction of a "garden shed" only; that is, a shed for storing garden implements and supplies, not a shed for general storage. The two who voted to deny the appeal and affirm the building inspector's order did so based on their interpretation of the regulations that the only applicable limitation on construction of this accessory building or shed relates to its maximum height pursuant to section 1.03.04(a). Since the shed in this case would not violate the 18 foot limit, these two members concluded that the regulations allowed the construction as of right. Indeed, the record indicates that one of these two members interpreted the regulations as permitting a "whatever shed."
In short, the record indicates that four, and possibly all five, of the board members found that the building in question is not a "garden shed" — that is, a shed for the storage of gardening equipment and supplies — but rather, it is a shed for general storage.
Certainly the evidence before the board supports the finding that the defendant's shed serves a larger purpose than the storing of gardening materials. As noted, the building in question consists of a 748 square foot, two story building. The record indicates that defendant Rowe initially contemplated using it at least partially as a place where her son could rehearse his band. She then changed her plans to use it principally for storage. As depicted in exhibits in the record, the building is far larger than a shed used merely for the storage of gardening equipment and supplies.
As noted, it was the two member minority vote that resulted in the CT Page 14500 board's decision to leave the zoning official's permission in place. In effect, therefore, the decision was based on the interpretation of the regulations that any accessory building is permissible so long as it conforms to the physical requirements of the regulations and is not prohibited by section 1.03.03.
Standards of review by this court of decisions of the zoning board of appeal are familiar and are correctly stated by both parties in their briefs to the court. "Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court (must) decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with . . . liberal discretion, and its action is subject to review . . . only to determine whether it was unreasonable, arbitrary or illegal.
"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the [board].
"The regulation is a local legislative enactment, and in its interpretation we seek to discern the intent of the legislative body as manifested in the words of the regulation. . . . Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning. . . . [W]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [D]oubtful language will be construed against rather than in favor of a [restriction]. . . ." (Citations and internal quotation marks omitted.) Farrior v. Zoning Board of Appeals, 70 Conn. App. 86, 89-90
(2002).
In the court's view, the Manchester board's decision failed to consider all of the regulations that applied to the facts of the case. Unless explicitly prohibited by section 1.03.03 and subject to the requirements CT Page 14501 of section 1.03.04, section 1.02 provides that an accessory building may be constructed as a permitted use by right and without a special exception or, if not a specifically permitted use, by special exception. The procedure and criteria for special exceptions are set forth in Article IV, section 20.
A garden shed is a specifically permitted use under section 1.03.01. If the building in question were a garden shed, therefore, the defendant would have had the right to construct it without a special exception. As noted, however, and as found by the board by implication, the building is in fact a general purpose storage shed. Such an accessory building is not prohibited by section 1.03.03, but because it is not a specifically permitted use, it would require a special exception pursuant to Article IV, section 20. The requirements for a special exception are more far reaching and demanding than the mere physical requirements of section 1.03.04 and, of course, the defendant has not applied for a special exception. The point here is that the board was in error in allowing the building official to approve the building in the absence of a special exception granted by the board or by the planning and zoning commission. Article IV, section 20.01.01.
The appeal is sustained.
Maloney, J. CT Page 14502