[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Laurence and Joy Hoffman, appeal from the decision of the defendant, the zoning board of appeals of Fairfield (ZBA), denying their application for an order directing the defendant, Richard Swann, to cease and desist construction of his home on property located at 1727 Fairfield Beach Road, in Fairfield, Connecticut. The plaintiffs bring this appeal pursuant to General Statutes § 8-8.
The record establishes the following facts. In 1992, the defendant, Richard Swann, purchased property located at 1727 Fairfield Beach Road for the purpose of tearing down an existing beach house and replacing it with a house of his own design. (ROR, Item 12, 36-37.) In 1993, the plaintiffs, Laurence and Joy Hoffman, purchased the property immediately adjacent to the Swann Property located at 1735 Fairfield Beach Road. (Id., 34.) The Hoffmans also purchased their lot for the purpose of building a new home of their own design. (Id.) The Hoffmans' house was completed before construction of the Swann house had begun. (Id.)
On November 14, 1996, after work on the Swann house had begun, the Hoffmans applied to the zoning enforcement officer of the town of Fairfield (ZEO) for an order directing Swann to cease and desist construction of the house on the ground that it violated the side yard set back requirements of § 11.11.1 of the Fairfield zoning regulations. (ROR, Item 2, p. 2.) Section 11.11.1 provides: "Sideyard setbacks for lots having an average width of less than forty (40) feet shall be as established by the existing foundation of the principal structure, or if there shall be no existing structure, the cumulative side yard setback shall be twenty (20) percent of the average width of the lot, but not less than four (4) feet on any side." The average width of the Swann lot is less than 40 feet. (Id., 37.) Although the new house is approximately the same width as the house it replaced, it is situated 2.7 feet closer to the westerly property line. (Id., 12-13.) The old house was located approximately 2 feet from the easterly line. (Id.) By CT Page 3721 placing the new house 2.7 feet closer to the westerly line, Swann essentially centered the house on the lot, leaving approximately a 4.1 foot setback on either side. (Id.)
On November 15, 1996, the ZEO denied the Hoffmans' request for a cease and desist order. On November 25, 1999, the Hoffmans applied to the ZBA for an order reverting the ZEO's decision. On January 9, 1997, after a public hearing, the ZBA denied the Hoffmans' application.
Presently before the court is the Hoffmans' appeal from the January 9, 1997 denial by the ZBA of their application for an order directing Swann to cease and desist construction of his house. As grounds for the appeal, the Hoffmans allege that the ZBA acted illegally, arbitrarily and in abuse of its discretion in one or more of the following ways: "(a) Since there was a structure at the Subject premises prior to the commencement of construction of the present house, the westerly side of the present house should be on the line established by the foundation of the structure previously existing at the Subject Premises, pursuant to Section 11.11.1 of the Fairfield Zoning Regulations . . . (c) The failure of the defendant Zoning Board of Appeals to reverse the decision of the zoning enforcement officer caused the space between owned by the defendant Swann, and the adjacent house owned by the plaintiffs, to be insufficient and inadequate, an invasion of the privacy of the plaintiffs, a potential hazard to health and safety, and an interference with the enjoyment by the plaintiffs of the use and possession of their home." (Appeal, ¶¶ 16(a) — (c).)
"General Statutes § 8-8 governs an appeal from the decision of a planning and zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276,283, 487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." (Citations omitted; internal quotation marks omitted.) Harris v. Zoning Commission,259 Conn. 402, 409, 788 A.2d 1239 (2002). "Aggrievement falls within two broad categories, classical and statutory." (Internal quotation marks omitted.) Cole v. Planning Zoning Commission, 30 Conn. App. 511,514, 620 A.2d 1324 (1993), aff'd on remand, 40 Conn. App. 501, 671 A.2d 844
(1996). "`Aggrieved person' . . . includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the CT Page 3722 land involved in the decision of the board." General Statutes § 8-8
(a) (1).
At the January 22, 2003 trial on the plaintiff's appeal, Laurence Hoffman testified that he and his wife are the owners of property that abuts the Swann property. Accordingly, the court finds that the Hoffmans are statutorily aggrieved for the purposes of bringing the appeal.
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) [now subsection (f)] further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the ZBA's decision was published in a newspaper having circulation in the town of Fairfield on January 15, 1997. (Appeal, ¶ 15.) This appeal was commenced on January 22, 1997, by service of process upon Richard Osborn, chairman of the Fairfield zoning board of appeals, upon Richard Swann, and upon Marguerite Toth, town clerk of the town of Fairfield, on January 23, 1997. (Sheriff's Return.) The court finds, accordingly, that the appeal was commenced in a timely fashion upon the proper parties.
"Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts . . . In applying the law to the facts of a particular case, the board is endowed with . . . liberal discretion, and its action is subject to review . . . only to determine whether it was unreasonable, arbitrary or illegal . . . Moreover, the plaintiffs bear the burden of establishing that the board acted improperly . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its CT Page 3723 discretion . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law . . . These principles apply equally to regulations as well as to statutes . . . However, a court that is faced with two equally plausible interpretations of regulatory language properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation." (Citations omitted; internal quotation marks omitted.) Wood v. Zoning Board of Appeals, 258 Conn. 691,697-99, 784 A.2d 354 (2001).
The plaintiffs argue that "the language of [§ 11.11.1] is clear. It directs the zoning enforcement officer to act in one of two ways, depending on the situation. Where a structure exists on the property in question, the replacement structure must lie in the footprint of that structure." (Plaintiff's Memorandum, p. 6.) The plaintiffs argue, moreover, that the "existing foundation of the principal structure" language contained in the first part of § 11.11.1 represents an intent on the part of the drafters to "preserve each homeowner's view of the water" and to "maintain the status quo." (Plaintiffs' Memorandum, p. ___) Austin Wolfe, attorney for the plaintiffs, appeared before the commission at the January 9, 1997 hearing on the plaintiffs' application. He stated that he served as chairman of the committee that drafted the Beach District regulations in 1989. (ROR, Item 12, p. 9.) He stated that before the new regulations were adopted, the ZBA spent "about a half or two-thirds of its time" dealing with Beach District variance applications. (Id.) He further stated that "[w]hen we were talking about sideyards, the Committee felt that with lots under 40 feet, with an existing structure, it was not unfair that someone who bought next to it or built next to it, should be able to [rely] on what was there." (Id.)
Swann counters that his home fully complies with the provisions of § 11.11.1. "The defendant tore down the house on the subject premises before he built the house to which the plaintiffs now object. The demolition included the foundation . . . so that in the words of § 11.11.1, the lot had `no existing structure.' According to the plain and specific language of § 11.11.1, `if there shall be no existing structure, then the cumulative sideyard setback shall be twenty (20) percent of the average width of the lot, but not less than four (4) feet on any side.' . . . The cumulative sideyard setbacks of the new house the defendant built on the property were four and one-tenth feet (4.1') on either side of the house . . . [Section] 11.11.1 requires four foot (4') sideyard setbacks where no existing structure exists . . . Therefore, the defendant complied with § 11.11.1 . . ." (Swann's Memorandum, pp. CT Page 3724 3-4.)
Swann also disputes the plaintiffs' assertion that § 11.11.1 was enacted for the purpose of maintaining the status quo in the Beach District by requiring that all new structures be built in the footprints of the structures they replace. He argues, instead, that "Fairfield Beach has its own section of zoning regulations because of the extremely high number of pre-existing nonconforming uses in a very close built neighborhood . . . To avoid requiring owners of the many lots less than forty feet (40') wide to constantly obtain variances for improving their homes, the Planning and Zoning Commission promulgated § 11.11.1, which allows owners of prior nonconforming uses due to violations of set back requirements to improve their homes without having to obtain variances as long as the work stayed within the footprint of the house." (Id., 7.)
The ZBA also filed a memorandum of law. The ZBA makes the same arguments as Swann, adding only that "[§ 11.11.1] has consistently been interpreted to permit the construction of new houses up to the four-foot setback, particularly when a preexisting house is demolished entirely . . ." (ZBA's Memorandum, p. 5.)
"A local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances." (Internal quotation marks omitted.) Pelliccionev. Planning Zoning Commission, 64 Conn. App. 320, 335, 780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2002). "A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation . . . The words [employed] are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms . . ." Id., 335-36. "Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning . . . [W]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [D]oubtful language will be construed against rather than in favor of a [restriction] . . ." (Citation omitted; internal quotation marks omitted.) Farrior v. ZoningBoard of Apneals, 70 Conn. App. 86, 89-90, 796 A.2d 567 (2002).
The court disagrees with the plaintiffs' assertion that § 11.11.1 CT Page 3725 clearly prohibited Swann from building a new house with sideyard setbacks of four feet. Swann applied for and received a permit to demolish the old house and foundation. Once demolished, there was no existing structure on the property. Section 11.11.1 states that "if there shall be no existing structure, the cumulative side yard setback shall be twenty (20) percent of the average width of the lot, but not less than four (4) feet on any side." The new house has sideyard setbacks of slightly more than four feet.
The plaintiffs argue, however, that the four foot setback provision in § 11.11.1 applies only "where there [was] no preexisting structure." (Plaintiffs' Memorandum, p. 5.) The regulation, however, does not use the term "preexisting," it uses the term "existing." The plaintiffs' interpretation, therefore, requires the court to include by implication that which is not within the regulation's express terms, something the court is not permitted to do; Planning Zoning Commission v.Gilbert, 208 Conn. 696, 705, 546 A.2d 823 (1988); particularly where doing so has the effect of placing additional restrictions on the use of land. Farrior v. Zoning Board of Appeals, supra, 70 Conn. App. 89-90 (holding that restrictions upon the use of land are not to be extended by implication and that doubtful language shall be construed against rather than in favor of a restriction).
It is important to note, moreover, that § 11.11.1 applies only to "sideyard setbacks." A setback is a measurement of distance. The plaintiff's assertion, therefore, that § 11.11.1 requires that a new structure lie in the "footprint" of the old structure is unsupported by the regulation's plain language. Section 11.11.1 merely governs the distance that must be maintained between the structure and the side property line. Indeed, § 11.11.1 does not preclude the owner of a house with sideyard setbacks of two feet from building an addition onto the rear of that house. It simply requires that the addition maintain the sideyard setbacks of the original structure. The addition must also, of course, comply with applicable street and Sound setback requirement.[1]
The very fact that additions are permitted under the regulations also undermines the plaintiffs' argument that § 11.11.1 was intended as a means of maintaining the status quo and preserving views. In the court's view, a two-story structure added to the back or front of a house is as likely to interfere with someone's views than if the house were simply moved two feet in one direction or another.
The plaintiffs' argument is further undermined by the provisions of § 11.11.12, which govern "Setbacks from Long Island Sound." Section 11.11.12 provides in relevant part: "The minimum setback of buildings and structures from Long Island Sound shall not be closer than the front wall CT Page 3726 of the building existing as of the date of the adoption of these BeachDistrict Regulations, or if a vacant lot, then no closer to the mean high water line . . . than a line drawn between the two (2) closest front corners of the closest houses on either side, including porches . . ." (Emphasis added.)
It is a basic tenet of statutory construction that a statute "must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." Lyman v.Lodrini, 63 Conn. App. 739, 744, 780 A.2d 932 (2001). "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . [so that] no word [or phrase] in a statute is to be treated as superfluous." Willoughby v. New Haven, 254 Conn. 404, 439, 757 A.2d 1083
(2000). Sections 11.11.1 and 11.11.12 both address the issue of setbacks within the Fairfield Beach District. Section 11.11.12, however, unambiguously provides that the minimum setback from the Sound shall be as established by "the front wall of the building existing as of the date of the adoption of these Beach District Regulations," unless the lot was vacant as of such date, in which case a different standard applies. Section 11.11.12 demonstrates, in the court's view, that had the drafters intended to restrict sideyard setbacks to the wall of the building existing as of the date of the adoption of the Beach Districtregulations, they would have used the same language used in 11.11.12. Section 11.11.12 further demonstrates that had the drafters intended that the second part of 11.11.1 apply only to lots that were "vacant" at the time the regulations were adopted, they would have said that too. Instead, the four feet setback requirement contained in the second part of 11.11.1 applies to a lot whereon there is "no existing structure."
The court notes, additionally, that while the record in this appeal is sparse, there is substantial evidence to support the interpretation of § 11.11.1 advanced by the defendants. In a letter to the ZBA dated December 17, 1996, Jim Wendt, assistant planning director for the town of Fairfield, writes: "Section 11.11.1 deals with the issue of side yard setback in the Beach District for lots less than 40 feet in width . . . The phrase `shall be established by the existing foundation of the principal structure' was intended, as other sections of the Beach District are intended, to avoid the necessity of a variance for existing non-conforming conditions. For example, if a one-story house exists at a distance of 2 feet from a side property line, this section would allow a second story to be constructed at the same distance without the need for a variance. This provision was devised due to the majority of non-conforming structures on such narrow lots . . . Since the Beach District was established, this section has been viewed to permit the CT Page 3727 improvement of dwellings which are less than four feet from a property line as long as new additions don't encroach any further toward a property line. Similarly, it has permitted dwellings which are greater than four feet from a property line to be improved provided any new addition maintains a four-foot setback." (ROR, Item, p. 1.) Wendt also testified that because the majority of lots in the Beach District are greater than 40 feet in width, the town has had few occasions to apply § 11.11.1, but when it has applied the regulation it has applied it consistently. (ROR, Item 12, p. 8.)
Attorney John Curran appeared before the ZBA on behalf of Mr. Swann. He argued that "the first section [of § 11.11.1] was devised by this committee in order to deal with existing non-conforming uses and Mr. Wolf is correct in saying that the intention was that every time somebody wants to do something with a non-conforming structure, they do not have to come in and get a waiver from you, the first section of [the] regulation stands by itself . . . Now, Mr. Wolf just may have been on the committee, but David Huntington was on the committee. David Huntington has signed countless plot plans down at the beach, and it is Dave's interpretation because he drafted this plan that [this] is what the regulation means. At every meeting that [Attorney Wolf] was at], Dave was there. What [Attorney Wolf] wants to say to you is that the world is out of step and Mr. Hoffman's world is in step. Joe Devonshuk is wrong, Jim Wendt, Peter Marsala is wrong, the Zoning Commission which implements the zoning regulations through its professional staff. They're all wrong, he's right, and I submit to you that the result that he wants you to arrive at, his interpretation of the . . . regulation . . . produce[s] a grotesque, unreasonable and strange result."[2] (Id., 38-39.)
Although the plaintiffs' interpretation of § 11.11.1 is reasonable, it is not the only reasonable interpretation nor is it the most reasonable interpretation in light of the evidence and in the context of the entire regulatory scheme. As previously noted, "a court that is faced with two equally plausible interpretations of regulatory language properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation." (Citations omitted; internal quotation marks omitted.) Wood v. ZoningBoard of Appeals, supra, 258 Conn. 697-99. Moreover, "[w]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [D]oubtful language will be construed against rather than in favor of a [restriction] . . ." (Citation omitted; internal quotation marks omitted.) Farrior v. ZoningBoard of Appeals, supra, 70 Conn. App. 89-90.
For the foregoing reasons, the plaintiffs' appeal is dismissed. CT Page 3728
OWENS, J.